**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNPOWER CORPORATION, et al., | |
| Wind-Down Debtor. | Case No. 24-11649 (CTG) |
| MARK ROBERTS, solely in his capacity as Plan Administrator of the Debtor's wind-down estate | Adv. Proc. No. 25-52473 (CTG) |
| Plaintiff, | |
| v. | |
| GREEN CONVERGENCE, | |
| Defendant. | |
| MARK ROBERTS, solely in his capacity as Plan Administrator of the Debtor's wind-down estate | Adv. Proc. No. 25-52477 (CTG) |
| Plaintiff, | |
| v. | |
| SOLAR TECH ENERGY SYSTEMS, INC, | |
| Defendant. | |

**MEMORANDUM OPINION**

The law regarding the ability of a post-confirmation trust to assert a state-law claim has become, to use the technical legal term, rather unruly. A few things are clear. A bankruptcy court has the authority to enforce the terms of the confirmed

plan. So when a plan requires parties to perform under an agreement, the court may enforce that contract after confirmation. The court may also hear disputes that arise under the Bankruptcy Code, such as avoidance actions and claims of violation of the discharge injunction. The court also retains the authority to enforce compliance with its prior orders, including, of course, the confirmation order.

The hard question arises in cases like the ones now before this Court, where either a reorganized debtor or a post-confirmation trust holds claims against a third party that arise purely under state law, such as an ordinary receivable that was alleged to have been due at the time the debtor filed the bankruptcy case. Before confirmation, these claims would fall within the "related-to" jurisdiction because of their effect on the estate. Because subject-matter jurisdiction is viewed as of the time a complaint is filed, there is little doubt that a post-confirmation trust could pursue such claims if the complaints were filed by the debtor in possession on the day before the plan became effective.[1] And in a chapter 7 case, while the claims may at some point be subject to a statute of limitations defense on the merits, there is no point in time at which those claims, asserted by the chapter 7 trustee, would fall outside the court's subject-matter jurisdiction.

But when the claims are first asserted by a post-confirmation trust or reorganized debtor after the plan has become effective, they are subject to a different set of jurisdictional rules. The claims are only within the bankruptcy court's subject-

---

[1] *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 264-265 (3d Cir. 2007) (measuring the post-effective date nature of a claim based on when the claim was filed).

matter jurisdiction if they have a "close nexus" to the plan. And the caselaw is quite clear that if all you can say about a "close nexus" is that (a) the point of the plan was to permit creditors to recover on their claims, and (b) having the trust recover money from third parties therefore achieves the purpose of the plan, the bankruptcy court lacks subject-matter jurisdiction. Recent cases, including Judge Walrath's decision in *Nu Ride* and the Fifth Circuit's decision in *Sanchez Energy,* make this point clear.[2]

And on the subject of "close nexus," that is essentially all that the plan administrator has to say. That is insufficient, and the Court will accordingly grant the motions to dismiss these complaints, in part, for want of subject-matter jurisdiction.

Specifically, the Court concludes that the post-confirmation trust's state-law receivable claims are neither core proceedings nor within this Court's post-confirmation related-to jurisdiction. Count I, which asserts a turnover claim under § 542, arises under the Bankruptcy Code and therefore falls within the Court's subject-matter jurisdiction, although it may face substantial merits obstacles. Counts II and III, however, must be dismissed for lack of subject-matter jurisdiction.

The Court will also use this opportunity to clarify certain of its prior statements on this subject that do not withstand closer scrutiny. The Court further seeks to offer guidance on the limited circumstances in which a plan's retention-of-jurisdiction provisions may, consistent with *Resorts International*, support post-

---

[2] *See In re Nu Ride Inc.*, No. 24-50179, 2025 WL 1600566 (Bankr. D. Del. June 5, 2025); *In re Sanchez Energy Corp.*, 159 F.4th 309 (5th Cir. 2025).

confirmation jurisdiction over claims that otherwise fall within the related-to jurisdiction.

* * *

The debtors in these cases sold and installed solar energy systems. The basic path these cases followed is a very common one in modern chapter 11 practice. The debtors came into bankruptcy facing serious liquidity constraints. They conducted a sale process through which substantially all of their assets were sold under § 363. The debtors then confirmed a plan that provided for the establishment of a post-confirmation trust to pursue estate causes of action, the proceeds of which are to be distributed to creditors.

Both Green Convergence and Solar Tech Energy, the defendants in the two adversary proceedings before the Court, are alleged to have been authorized dealers of SunPower's solar energy systems. Each is alleged to have owed the debtors approximately $450,000 under their dealer agreements as of the date of the bankruptcy filing. And in these adversary proceedings, the plan administrator is suing to recover these outstanding amounts. Both defendants have moved to dismiss the complaints (in part) on the ground that this Court lacks subject-matter jurisdiction over these claims.[3] For the reasons described below, the Court will grant the motions in part.

---

[3] The complaints also contain claims that seek to avoid and recover alleged preferences under §§ 547 and 550 of the Bankruptcy Code. These claims are not the subject of the present motions to dismiss.

As Part I of this Memorandum Opinion explains, the claims are not core proceedings. It is true that there are cases that so hold, including this Court's opinion in *Structurlam*. But counsel for the defendants pointed out a problem with that reasoning that had not been raised by the parties in *Structurlam*. The statutory provision on which this Court relied for its statement in *Structurlam* for the proposition that a counterclaim to a proof of claim was a core matter (and therefore within the "arising in" jurisdiction) was 28 U.S.C. § 157(b)(2)(C), which describes "counterclaims by the estate against persons filing claims against the estate" as core matters.[4] Green Convergence points out, however, that if one reads that statutory language in light of the Third Circuit's point in *Resorts* about how a bankruptcy estate typically terminates at confirmation, this counterclaim asserted by the post-confirmation trust cannot be said to be a counterclaim "by the estate."[5] The Court is persuaded by that argument. As a result, the claims by the trust seeking to recover on the debtors' receivables cannot be core matters.

The plan administrator argues that, in the alternative, the claims are within the Court's "related-to" jurisdiction. This is the area of law where, as described above, current doctrine is unsettled. Part II of this Memorandum Opinion explains, however, that the claims at issue are not within the related-to jurisdiction. Part II first explains that while some courts have adopted a broader view, in the Third Circuit, a conceivable effect on the estate is a *necessary* element to establish that a

---

[4] 28 U.S.C. § 157(b)(2)(C).

[5] *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004).

5

dispute is within the related-to jurisdiction. It then sets forth the standard applicable to the exercise of post-confirmation related-to jurisdiction – the "close nexus" test of *Resorts*. While courts have struggled with how to apply the "close nexus" test, the Court concludes that, under any formulation, the failure to identify the claims at issue here with any degree of specificity means that they do not have a "close nexus" to the plan. Finally, the Court sets out its view about the most sensible approach to give appropriate meaning to the "close nexus" test set out in *Resorts*.

## Factual and Procedural Background

### 1.    The Bankruptcy Case

SunPower Corporation was a provider of residential solar energy products and services. On August 5, 2024, SunPower filed a voluntary petition under chapter 11 of the Bankruptcy Code.[6] Over the course of the bankruptcy case, the debtors sold substantially all of their assets through a series of asset sales under § 363 of the Bankruptcy Code.[7] In October 2024, the Court confirmed the debtors' plan, under which the post-confirmation debtors effectively operate as a post-confirmation trust that was vested with estate causes of action. Mark Roberts serves as the plan administrator.[8]

---

[6] *In re SunPower Corp.*, Bankr. D. Del. No. 24-11649, D.I. 1. Items on the docket of the main bankruptcy case are hereafter referred to as "Main Case D.I. __." The Court provides this brief overview of the main bankruptcy case simply by way of background. The resolution of the motions to dismiss the complaints are based on the allegations in the respective complaints, which are taken as true for this purpose.

[7] Main Case D.I. 287, 605, 611, 859, 860, & 861.

[8] Main Case D.I. 872-1, Art. I.A.102. As a technical matter, the plan in this case created two post-confirmation entities. The Creditor Trust is a traditional post-confirmation trust that is vested with cash and certain estate causes of action, the proceeds of which are to be distributed to unsecured creditors (and, to a limited extent, first-lien secured lenders).

Article IV.P of the plan expressly vests "Causes of Action," a defined term under the plan, in the Wind Down Debtor. "[A]ll Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Creditor Trust or the Wind-Down Debtors, as applicable."[9] The term "Causes of Action" is broadly defined to include all claims, including claims arising in contract.[10] And the plan supplement broadly states that the Wind Down Debtors "expressly reserve and retain all Causes of Action against or related to all Entities that owe or that may in the future owe money to any Debtor or Wind-Down Debtor, regardless of whether such Entity is expressly identified in this Schedule, the Plan, the Plan Supplement, or any amendments

---

Roberts, as plan administrator, oversees the Wind Down Debtors, which are liquidating successors to the debtors, rather than a post-confirmation trust that is first created on a post-confirmation basis. But unlike a typical reorganized debtor, the Wind Down Debtors do not engage in business activity. Rather, the Wind Down Debtors were vested with those assets that were not assigned to the Creditor Trust (cash, contract rights, directors' and officers' insurance coverage, certain avoidance actions that initially remain with the Wind Down Debtors, and other causes of action, such as those asserted here). The cash left in the Wind Down Debtors pays any unpaid secured claims, as well as priority and administrative claims. Because the Creditor Trust and the Wind Down Debtors are both post-confirmation entities, the law governing the court's exercise of post-confirmation jurisdiction—including the requirement that there be a "close nexus" between the dispute and the plan or its implementation in order to support what would otherwise be related-to jurisdiction—operates in the same way for the Wind Down Debtors as it would if the plaintiff were a typical post-confirmation trust.

[9] Main Case D.I. 872-1, Art. IV.P.

[10] *Id.* Art. I.A.25.

hereto or thereto."[11]  Article XII of the plan also contains a retention of jurisdiction provision.[12]

### 2.    The Adversary Proceedings

The adversary proceedings before this Court are actions to collect on receivables allegedly due to the estate from the defendants, Green Convergence and Solar Tech.  The complaints also include counts seeking avoidance and recovery of allegedly preferential transfers.[13]

Before filing for bankruptcy, in March of 2021, SunPower is alleged to have entered into residential dealer agreements with both of the defendants, who were installer-dealers of SunPower's products.  Under their agreements, the defendants agreed to serve as authorized dealers and to purchase SunPower products for resale, installation, and service to customers.[14]  After SunPower filed for bankruptcy, Green Convergence filed a proof of claim asserting a claim of approximately $10.6 million for services provided and contractual damages.[15]  Solar Tech similarly filed a proof of claim asserting a prepetition claim of approximately $5.1 million.[16]

---

[11] Main Case D.I. 1051-3.

[12] Main Case D.I. 872-1, Art. XII.

[13] The complaint against Green Convergence is docketed at *Roberts v. Green Convergence*, Bankr. D. Del. No. 25-52473, D.I. 1.  Items on the docket of that adversary proceeding are referred to as "Green Convergence D.I. __."  The complaint against Solar Tech is docketed at *Roberts v. Solar Tech Energy Sys. Inc.*, Bankr. D. Del. No. 25-52477, D.I. 1.  Items on the docket of that adversary proceeding are referred to as "Solar Tech D.I. __."  Solar Tech Energy Systems, Inc. is referred to as "Solar Tech."  Green Convergence and Solar Tech are referred to collectively as the "defendants."

[14] Green Convergence D.I. 1 ¶ 21; Solar Tech D.I. 1 ¶ 21.

[15] Green Convergence D.I. 21 Ex. A.

[16] Solar Tech D.I. 12 Ex. A.

In December of 2025, the plan administrator filed complaints against the defendants. Both complaints contain six counts: (I) turnover of alleged property of the estate pursuant to §§ 541 and 542, (II) breach of contract, (III) declaratory judgment that the alleged receivable balance is owed, (IV) avoidance of alleged preferences pursuant to § 547, (V) recovery of avoided transfers pursuant to § 550, and (VI) disallowance of claims pursuant to § 502(d) and (j).[17] The complaints allege that: (1) the defendants breached their dealer agreements and accrued unpaid and outstanding balances (in both cases in the ballpark of $450,000) and (2) during the 90-day preference period, received alleged preferences (in the case of Green Convergence, of approximately $300,000; for Solar Tech, the preference seeks to recover approximately $50,000).[18] Both defendants dispute these claims.

In response to the complaints, the defendants moved to dismiss counts I, II and III for lack of subject-matter jurisdiction, arguing that they are state-law claims that lack the required "close nexus" to the plan necessary to satisfy the test for post-confirmation jurisdiction set out by the Third Circuit in *Resorts*.[19] While the defendants acknowledge that the plan has a broad retention-of-jurisdiction provision, they argue that the plan cannot "retain" subject-matter jurisdiction beyond that granted by Congress in § 1334(b).

---

[17] Green Convergence D.I. 1; Solar Tech D.I. 1.

[18] Green Convergence D.I. 1. ¶¶ 24, 26; Solar Tech D.I. 1 ¶¶ 24, 26.

[19] Green Convergence D.I. 8 (motion to dismiss); Green Convergence D.I. 9 (supporting brief); Solar Tech D.I. 8 (motion to dismiss); Solar Tech D.I. 9 (supporting brief).

The plan administrator responds by arguing that the actions to recover the estate receivables are core proceedings "arising in" the bankruptcy case because they are counterclaims to the defendants' proofs of claim.[20]  The plan administrator also argues that the actions satisfy the "close nexus" test of *Resorts*.

## Jurisdiction

Because subject-matter jurisdiction is contested in these adversary proceedings, the analysis of whether the Court has jurisdiction is addressed below.

## Analysis

Federal Rule of Civil Procedure 12(b)(1), made applicable hereto by Federal Rule of Bankruptcy Procedure 7012, permits dismissal for lack of subject-matter jurisdiction.  Because the defendants' motion presents a facial challenge to the Court's jurisdiction, the Court accepts the complaints' well-pleaded factual allegations as true and asks whether Counts I, II, and III fall within the Court's subject-matter jurisdiction under 28 U.S.C. § 1334(b).

## I.    The receivable claims are not core matters that fall within either the "arising under" or "arising in" jurisdiction.

As is now familiar ground, 28 U.S.C. § 1334(a) creates federal subject-matter jurisdiction over "all cases under title 11."[21]  Section 1334(b) creates jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[22]

---

[20] Green Convergence D.I. 20 at 7-9; Solar Tech D.I. 11 at 7-9.

[21] 28 U.S.C. § 1334(a).

[22] *Id.* § 1334(b).

The first category, a case "under" title 11, refers to the "main bankruptcy case – the one initiated by the filing of the petition."[23]  For the bankruptcy court to have subject-matter jurisdiction over other proceedings, those proceedings must fit within one of § 1334(b)'s categories: proceedings that "arise under" the Bankruptcy Code, "arise in" a bankruptcy case, or are "related to" that case.

In its most recent decision focused on the scope of the bankruptcy jurisdiction, the Third Circuit explained that:

> A case 'arises under' the Bankruptcy Code when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. Proceedings 'arising in' a case under the Bankruptcy Code include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy.  Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors.[24]

*Essar Steel* further explained that the matters that 28 U.S.C. § 157(b) lists as "core matters," ones that may be referred to bankruptcy judges to "hear and determine," are those that either "arise under" the Bankruptcy Code or "arise in" a bankruptcy case.  Matters that are only "related to" the bankruptcy case are treated by the statute as non-core.[25]

---

[23] *In re Town Sports Int'l, LLC,* No. 20-12168, 2023 WL 124860, at *6 (Bankr. D. Del. Jan. 6, 2023).

[24] *In re Essar Steel Minnesota, LLC,* 47 F.4th 193, 197 (3d Cir. 2022).

[25] *Id.* at 198.  This otherwise neat allocation, however, is disrupted somewhat by the fact that certain of the matters listed as core may not, consistent with Article III of the Constitution, be "heard and determined" by the bankruptcy court.  *See Stern v. Marshall*, 564 U.S. 462 (2011).  Those matters are accordingly treated as if they are non-core.  *See Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 31–36 (2014).

One of the categories of claims that § 157(b)(2) described as core is "counterclaims by the estate against persons filing claims against the estate."[26]  In *Structurlam,* this Court addressed the question whether a post-confirmation trust could assert a claim that was described by the trust as a counterclaim to the creditor's proof of claim.  The Court held that it could, reasoning that such a claim would fall within the Bankruptcy Code's "arising in" jurisdiction since such counterclaims are described in § 157(b)(2)(C) as core matters.[27]

In *Structurlam*, however, neither party questioned this Court's subject-matter jurisdiction.  Rather, this Court raised the question on its own motion, as it is required to do under binding precedent.[28]  There is good reason, though, why outside the context of subject-matter jurisdiction, our adversarial process depends on parties to present issues to the Court.  Our "system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief."[29]  Courts are supposed to be "passive instruments of government," not "ones that sally forth

---

[26] 28 U.S.C. § 157(b)(2)(C).

[27] *In re Structurlam Mass Timber U.S., Inc.*, No. 25-50541, 2025 WL 3037162, at *9 (Bankr. D. Del. Oct. 30, 2025).

[28] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts ... have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (same).

[29] *United States v. Sineneng-Smith*, 590 U.S. 371, 375-376 (2020) (internal quotations, citations and brackets omitted).

each day looking for wrongs to right.  They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties."[30]

One of the reasons for that, of course, is that courts are more likely to get things right when they have the benefit of adversarial presentation by parties with an actual stake in the outcome. And now that the issue raised by the Court in *Structurlam* has been presented by a party with a stake in its resolution, that party has made a point that the Court unfortunately overlooked when it was acting without the benefit of adversarial presentation.

Specifically, counsel for Green Convergence made the point that the language of § 157(b)(2)(C) focuses on counterclaims filed "by the estate."  And the very problem to which *Resorts* is directed is the fact that after confirmation there typically is no bankruptcy estate.  That is the reason that claims asserted by a post-confirmation trust typically do not meet *Pacor*'s requirement of having an effect "on the estate."[31] And that, in turn, is why, under *Resorts*, the post-confirmation related-to jurisdiction narrows to claims with a "close nexus" to the confirmed plan.[32]   The Court is persuaded that Green Convergence is right about that point.  The result may be different in cases in which the claim and counterclaim are two sides of the same coin – where all of the issues that are raised by the counterclaim will necessarily be decided in resolving the creditor's proof of claim.[33]  But there is no suggestion that

---

[30] *Id.* at 376 (internal quotations, citations and brackets omitted).

[31] *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).

[32] *See Resorts*, 372 F.3d at 165.

[33] For example, the Court in *Stern v. Marshall* at least left open the question whether a bankruptcy court could adjudicate a counterclaim to a proof of claim that was otherwise a

this is the case here.  Accordingly, contrary to what this Court said in *Structurlam,* the Court does not believe it has subject-matter jurisdiction over the receivable claims merely because they are asserted by the plan administrator against creditors that filed proofs of claim against the estate.  For this reason, the Court does not believe that the action to recover the receivables falls within the "arising in" jurisdiction.  Rather, subject only to the exception set forth in the next paragraph, subject-matter jurisdiction over those claims turns on whether they fall within the "related-to" jurisdiction.

The exception is Count I of the Complaint, which asserts a claim for turnover under § 542 of the Bankruptcy Code.  Because the cause of action asserted there is one created by the Bankruptcy Code itself, *that* claim does "arise under" the Bankruptcy Code.  There is, of course, a (glaringly obvious) merits question about a claim for turnover in this context.  Courts have typically held that the turnover power

---

matter of private right where the process of allowing the creditor's claim "would necessarily resolve" the counterclaim.  *Stern*, 564 U.S. at 497.  *See also Katchen v. Landy*, 382 U.S. 323, 330 (1966) (holding that bankruptcy court could hear preference action as a "summary proceeding" without a jury when it became, by virtue of the creditor's filing of a proof of claim, "part and parcel" of the claims allowance process); *In re KDC Agribusiness LLC*, No. 26-50207, (Bankr. D. Del. July 9, 2026) (on the same theory, holding that a trustee's lawsuit alleging both prepetition and postpetition malpractice was a core matter when the trustee had asserted the malpractice as a defense to the lawyer's fee application).  It also bears note, however, that while the Supreme Court in *Stern* addressed the question whether the counterclaim there was a "compulsory" one, it is at least not obvious, as a bankruptcy scholar has noted, that there is even such a thing as a "compulsory counterclaim" to a proof of claim in the sense that the estate's failure to assert such a claim in response to the creditor's claim would operate to bar the estate from pursuing the claim in a separate action.  *See* Ralph Brubaker, *The Preclusive Effect of a Claims Allowance Order on a Subsequent Avoidance Action Against the Creditor*, 33 Bankr. L. Letter 1, 4, (May 2013) ("nothing in the Bankruptcy Code nor Rules *requires* a trustee or DIP to file counterclaims in objecting to a creditor's claim") (emphasis in original).

cannot be used to liquidate a disputed claim for breach of contract.[34]   But that is a *merits* issue, not one of subject-matter jurisdiction.  The Court will accordingly deny the motion to dismiss Count I for want of subject-matter jurisdiction.  That ruling is of course without prejudice, however, to the defendants' right to seek summary judgment on Count I on that basis.

## II.   The receivable claims do not fall within the "related-to" jurisdiction.

Courts have found the task of defining the outer limits of the "related-to" jurisdiction provided under 28 U.S.C. § 1334(b) to be a deceptively difficult one.  On the one hand, the Third Circuit said in *Pacor* that a matter is "related to" a bankruptcy case if the outcome of the dispute can have a "conceivable effect" on the bankruptcy estate.[35]  The Supreme Court seemingly embraced the *Pacor* standard in *Celotex*, and, as the Court noted there, the courts of appeals that had considered the issue generally adopted the same or a similar standard.[36]

---

[34] *See United States v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes."); *In re Charter Co.,* 913 F.2d 1575, 1579 (11th Cir. 1990) ("Turnover proceedings are not to be used to liquidate disputed contract claims.").

[35] *Pacor,* 743 F.2d at 994. *See also In re Federal-Mogul Global, Inc.,* 300 F.3d 368, 381 (3d Cir. 2002).

[36] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("We agree with the views expressed by the Court of Appeals for the Third Circuit in [*Pacor*] that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.  We also agree with that court's observation that a bankruptcy court's 'related to' jurisdiction cannot be limitless.") (internal quotation and citations omitted).  *See also id.* at 308 n.6 (surveying the courts of appeals, and observing that "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor"); Jack Zarin-Rosenfeld*, Designing Related-To Bankruptcy Jurisdiction*, 89 N.Y.U.L. Rev. 390, 392 (2014) ("The Third Circuit's test

15

On the other hand, one need not do more than scratch at the surface of this doctrine to discover that the claimed consensus is more apparent than real. For example, Judge Bonapfel concluded in *Hospitality Ventures* that the court could exercise "supplemental jurisdiction" over claims that had some logical relationship to the bankruptcy case, even where there is no "conceivable effect" on the estate. In his view "the conceivable effect test is the *usual* test" for the exercise of the related-to jurisdiction, but it is not the "exclusive one."[37] By the same token, the Ninth Circuit held in *Pegasus Gold* that bankruptcy courts may exercise the supplemental jurisdiction granted in 28 U.S.C. § 1367 when claims arise out of the same transaction or occurrence as claims that are otherwise within the § 1334(b) jurisdiction.[38]

Other courts, though, take a stricter view of the limits on the related-to jurisdiction, believing that in the absence of a conceivable effect on the estate, there can be no related-to jurisdiction. Judge Gonzalez, for example, found in *Enron* that after the debtor sued Barclays and various of its affiliates for having participated in the off-balance-sheet transactions that led to the company's demise, he lacked subject-matter jurisdiction over Barclays' third-party claims against Arthur Andersen that asserted that Andersen had primary responsibility for the improper

---

for related-to jurisdiction from *Pacor, Inc. v. Higgins*, which asks whether a proceeding 'could conceivably have any effect' on the debtor's bankruptcy estate, is nearly universally accepted in its highly abstract form.") (citation omitted).

[37] *In re Hospitality Ventures/LaVista*, 358 B.R. 462, 476 (Bankr. N.D. Ga. 2007) (emphasis in original).

[38] *In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005). *See also In re Dambowsky*, 526 B.R. 590 (Bankr. M.D. N.C. 2015) (finding that court has authority to enter judgment against the debtor on a non-dischargeable debt, despite the fact that the claim asserted against the individual debtor personally would not, by itself, have a "conceivable effect" on the estate).

16

accounting.[39]   That was a claim by one non-debtor against another that did not, by itself, affect the bankruptcy estate.  The claim was therefore outside the related-to jurisdiction.  Judge Gonzalez concluded that even if a district court may broadly exercise supplemental jurisdiction, under § 1367, over claims arising out of the same transaction or occurrence as a claim that is otherwise within the bankruptcy jurisdiction, that power may not be referred to the bankruptcy courts under § 157(a), which limits the referral to matters within the § 1334(b) jurisdiction.[40]

As will be described below in Part II.A, contrary to the *Hospitality Ventures* court (which was applying Eleventh Circuit law), this Court reads *Pacor* and subsequent Third Circuit authority to mean, consistent with Judge Gonzalez' reading in *Enron*, that a showing of a conceivable effect on the bankruptcy estate is not only sufficient but is *necessary* to bring a matter within the related-to jurisdiction.  And as noted above, whether or not a *district court* may exercise, under § 1367, jurisdiction that is "supplemental" to § 1334(b)'s related-to jurisdiction, the Court thinks it clear that a bankruptcy court may not.  Part II.B explains that in the context of post-

---

[39] *In re Enron Corp.*, 353 B.R. 51 (Bankr. S.D.N.Y. 2006).

[40] *Id.* at 59 ("the language of section 157 tracks the language of section 1334(a) & (b) and, therefore, only authorizes the reference of cases and of proceedings within the district court's 'arising under,' 'arising in,' and 'related to' jurisdiction.  Thus, even if the district court has original jurisdiction over the section 1334 bankruptcy claims and has section 1367 supplemental jurisdiction over the Third–Party Complaint, there is no statutory basis authorizing the reference of any matters over which the district court may have supplemental jurisdiction").  *See also In re Adamson*, 334 B.R. 1, 12 (Bankr. D. Mass. 2005) (describing assertion that bankruptcy courts may exercise supplement jurisdiction as a "dubious proposition"); *In re Walker*, 51 F.3d 562 (5th Cir. 1995) (same).  In this jurisdiction, Judge Shannon's opinion in *Semcrude* follows *Enron* and *Walker* in holding that bankruptcy courts may not exercise supplemental jurisdiction.  *In re Semcrude, L.P.*, No.08–11525, 2010 WL 5140487 (Bankr. D. Del. Dec. 13, 2010).  This Court followed *Semcrude* in *In re Healthcare Real Estate Partners, LLC*, 639 B.R. 294, 298 (Bankr. D. Del. 2022).

confirmation jurisdiction, the exercise of related-to jurisdiction requires a showing that the dispute has a "close nexus" to the confirmed plan. Part II.C. addresses the challenges that courts have had in applying this "close nexus" test. Finally, Part II.D explains that retention-of-jurisdiction provisions may, in certain cases, provide a basis for a bankruptcy court to exercise post-confirmation jurisdiction over a claim asserted by a post-confirmation entity in a circumstance other than a suit to enforce the plan itself. The Court concludes, however, that the terms of this plan are insufficient to support the exercise of such jurisdiction.

### A. Unlike some other circuits, the Third Circuit applies the *Pacor* test strictly – a "conceivable effect on the estate" is required.

As described above, courts appear unanimous in concluding that when the outcome of a dispute may have a conceivable effect on the bankruptcy estate, the claim is within the "related-to" jurisdiction. They are divided, however, on at least two questions: (1) whether, in the period before confirmation, a conceivable effect on the bankruptcy estate is merely a *sufficient* basis to assert related-to jurisdiction or whether such a conceivable effect is a *necessary* condition to the court's jurisdiction; and (2) whether a bankruptcy court may exercise § 1367's supplemental jurisdiction. The Court is unaware of Third Circuit precedent that squarely resolves either of those two issues. But this Court believes that, on the first question, the better reading of existing Third Circuit precedent is that a conceivable effect on the estate is not only sufficient but *necessary* for the Court to exercise related-to jurisdiction. And on the second question, this Court has previously concluded that the supplemental jurisdiction – if it is available to the district courts at all when a matter is otherwise

18

with the "related-to" jurisdiction – is outside the scope of what is or may be delegated to the bankruptcy judges under § 157(a).

*Pacor* itself involved a wrongful death/asbestos case: Higgins sued Pacor in Pennsylvania state court alleging that her husband died from exposure to asbestos Pacor supplied. Pacor in turn filed a third-party claim against Johns-Manville, the manufacturer, seeking indemnification. When Johns-Manville filed for bankruptcy, Pacor tried to remove the entire Higgins-Pacor state court action to federal court, arguing that it was "related to" the *Manville* bankruptcy because of the indemnification claim against Manville. The Third Circuit disagreed, holding that a lawsuit is only "related to" a bankruptcy case under § 1334(b) if its outcome could conceivably have an effect on the bankruptcy estate — meaning that it alters the debtor's rights, liabilities, or the handling of the estate. Because Manville was not a party to the Higgins-Pacor suit and any obligation Manville might owe Pacor would require a wholly separate lawsuit to establish, the Third Circuit found the connection too indirect and speculative, and the case was sent back to state court.

The Third Circuit built on this analysis in *Federal-Mogul*.[41] There, asbestos plaintiffs sued non-debtor co-defendants who argued that possible future indemnification or contribution claims against Federal-Mogul gave the district court "related-to" jurisdiction over the entire suit. The Third Circuit rejected that reading, explaining that "related-to bankruptcy jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical

---

[41] *In re Federal-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002).

19

possibility that the estate will be affected."[42]  In effect, *Federal-Mogul* turned *Pacor'*s broad "conceivable effect" language into a more demanding test, one that screens out cases in which the connection to the estate depends on a chain of hypothetical future litigation rather than arising as a matter of law.

This analysis was further refined in *Combustion Engineering*, where the Third Circuit held that shared insurance, common ownership, and joint operations do not themselves establish "related-to" jurisdiction over claims against the non-debtors when those claims would not directly create liability for the debtor, but at most a contribution claim that (as in *Federal-Mogul*) would require another lawsuit to affect the estate.

Finally, *W.R. Grace* surveyed this line of authority and concluded that the relationship between the state of Montana (which sought the benefit of a third-party injunction in the bankruptcy case) and the debtor was  too similar to the relationships in the three prior cases to justify the exercise of related-to jurisdiction.  "In short, our recently reaffirmed precedent dictates that a bankruptcy court lacks subject matter jurisdiction over a third-party action if the only way in which that third-party action could have an impact on the debtor's estate is through the intervention of yet another lawsuit."[43]

To be sure, this line of cases may not state, in so many words, that in the absence of an effect on the bankruptcy estate, a bankruptcy court may *never* exercise

---

[42] *Id.* at 380.

[43] *In re W.R. Grace & Co.*, 591 F.3d 164, 173 (3d Cir. 2009).

20

related-to jurisdiction.  The tone and tenor of the analysis, however, is far more in line with the strict approach adopted in *Enron* than the laxer approach reflected in *Health Ventures*.  At least in this Court's view, this rigorous requirement that demands an effect on the estate bears on the more specific question presented here – which is the required "nexus" to the plan required to support the post-confirmation exercise of related-to jurisdiction under *Resorts*.

Relatedly, following Judge Shannon's decision in *Semcrude*, this Court has rejected the proposition that a bankruptcy court has the authority to hear a dispute on the ground that it arises out of the same transaction or occurrence as some other case that is within the court's related-to jurisdiction.[44]  Section 1367 grants the district courts such "supplemental jurisdiction" over all claims that are related-to ones over which the court otherwise has jurisdiction except as "expressly provided otherwise by Federal statute."[45]

There is clearly a sense in which § 1334(b)'s related-to jurisdiction *is* its own form of supplemental jurisdiction, such that the exercise of jurisdiction that is "related to" a case that is itself "related to" the bankruptcy case just feels like a bridge too far.  But that is a way of saying that § 1334(b) *implies* that it should not be the hook for the exercise of supplemental jurisdiction, not that the statute "expressly provide[s]" that it cannot be.  So as a textual matter, this Court believes there is at

---

[44] *Healthcare Real Estate Partners,* 639 B.R. 294.

[45] 28 U.S.C. § 1367.

21

least a fair argument that district courts may be able to exercise supplemental jurisdiction over a claim that arises out of the same transaction or occurrence as one that is within § 1334(b)'s jurisdiction, including the related-to head of jurisdiction.

That, however, is a matter for a district court to decide. As far as this Court is concerned, the Court remains satisfied that even if the district court has jurisdiction over such a claim, it may not be referred to the bankruptcy judges. That is because the reference from the district court to the bankruptcy judges is set forth in § 157(a). That provision authorizes the district court to refer to the bankruptcy judges for the district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."[46] This provision describes § 1334(b)'s related-to jurisdiction and makes no reference to the supplemental jurisdiction under § 1367. So even if a district court may exercise this supplemental jurisdiction over such a claim, it cannot be referred to the bankruptcy courts.

This point is relevant here because other claims in the same complaint (such as the avoidance claims) arise under the Bankruptcy Code and are therefore within the § 1334(b) jurisdiction. But even if those claims arise out of the same transaction or occurrence as the receivable claims that the defendants have moved to dismiss, that would provide no basis for this Court to exercise supplemental jurisdiction over them.

---

[46] 28 U.S.C. § 157(a).

**B.    Under *Resorts*, post-confirmation, the "related-to" jurisdiction is limited to matters having a "close nexus" to the confirmed plan.**

The analysis above is addressed to the exercise of related-to jurisdiction, in a chapter 11 case, before the plan is confirmed.  But the Third Circuit's decision in *Resorts* makes clear that claims asserted after the plan has been confirmed are different.[47]

In *Resorts*, a post-confirmation trust sued the accounting firm Price Waterhouse, bringing claims for malpractice and breach of contract in connection with the accounting firm's post-effective date conduct.[48]  The Third Circuit held that the bankruptcy court lacked subject-matter jurisdiction over those claims.  The court's reasoning was that § 1141(b) of the Bankruptcy Code provides that upon confirmation of a plan, all estate property will typically vest in the debtor.  Since the revesting of estate property in the debtor will terminate the bankruptcy estate, and *Pacor* limits the related-to jurisdiction to matters that have a conceivable effect on

---

[47] *Resorts*, 372 F.3d 154.

[48] *Id.* at 156.  Note that while the claim in *Resorts* arose after the effective date of the plan, the Third Circuit later clarified that the opinion's analysis applied equally to claims that arose prepetition.  *See Seven Fields*, 505 F.3d at 264-265 ("After our present consideration of *Resorts,* we are satisfied that the 'close nexus' test is applicable to 'related to' jurisdiction over any claim or cause of action filed post-confirmation, regardless of when the conduct giving rise to the claim or cause of action occurred. We reach this conclusion because in *Resorts,* though we were dealing with post-confirmation rather than pre-confirmation conduct, we focused on the point of time in which the cause of action was instituted: whether it was filed in the 'post-confirmation stage…  Furthermore, we did not indicate that the test should be confined to situations in which the conduct giving rise to the complaint occurred post-confirmation.").

the estate, there can be no traditional "related-to" jurisdiction after plan confirmation.[49]

The passage of the Third Circuit opinion that follows after this statement is something of a puzzle. After explaining how the termination of the bankruptcy estate would logically mean the end of the related-to jurisdiction, the court went on to say that "courts do not usually apply *Pacor*'s 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction."[50] After offering up a few different formulations provided in different cases of the standard governing post-confirmation jurisdiction, the Third Circuit announced that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter."[51] And the court went on to describe a case with a "close nexus" as, in substance, one in which the court is "required to construe and enforce provisions of the [plan and confirmation order]."[52] As the Third Circuit went on to explain, when a "matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate."[53]

---

[49] *Resorts*, 372 F.3d at 165 ("At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.").

[50] *Id.*

[51] *Id.* at 166-167.

[52] *Id.* at 167.

[53] *Id.* at 168-169.

The reason that this is a puzzle is because, as the Third Circuit later explained in both *Essar Steel* and in its 2018 *W.R. Grace* opinion (not to be confused with the several other Third Circuit decisions coming out of that case, including the 2009 opinion in *W.R. Grace* described above), the authority to enforce the court's own prior orders does not depend on the existence of a post-confirmation related-to jurisdiction. Rather, the authority to enforce a prior order of the court is grounded in whatever the source of authority was by which the court entered that prior order.[54] Accordingly, if all one is doing is seeking to construe or enforce the confirmation order, or a plan whose terms are incorporated into that order, one would not need a post-confirmation related-to jurisdiction. At the same time, the law is equally clear that the "close nexus" requirement applies only in the context of related-to jurisdiction and does not apply when a case falls within the "arising in" or "arising under" jurisdiction.[55]

Perhaps for this reason, courts have, since *Resorts*, struggled to articulate and apply a consistent standard to determine whether a cause of action that would have been within the bankruptcy court's related-to jurisdiction if asserted by the debtor the day before confirmation may be heard in the bankruptcy court when asserted by a post-confirmation trust on the day after confirmation. And as the high cost of

---

[54] *In re W.R. Grace & Co.*, 900 F.3d 126, 139 (3d Cir. 2018) (because the bankruptcy court's prior injunction was a proper exercise of the related-to jurisdiction, "we do not doubt the Bankruptcy Court's jurisdiction to enforce the Injunction"); *Essar Steel*, 47 F.4th at 200 ("civil contempt proceedings arising out of core matters are themselves core matters") (internal brackets and quotation omitted).

[55] *See Seven Fields.*, 505 F.3d at 260 ("the 'close nexus' standard only applies for the purposes of determining whether a federal court has jurisdiction over a non-core 'related to' proceeding in the post-confirmation context").

chapter 11 has driven parties to get from the petition date to the effective date in shorter and shorter periods, thereby leaving more and more of the work of recovering on estate claims for the benefit of creditors to post-confirmation liquidating trusts, the issue has become an increasingly important one in the administration of bankruptcy cases.

It bears note that the challenge of defining the limits of the post-confirmation related-to jurisdiction, and what it means for a dispute to have a "close nexus" to a confirmed plan, is by no means limited to the Third Circuit.  For example, in its 2025 opinion in *Sanchez Energy*, the Fifth Circuit reversed a bankruptcy court that had exercised post-confirmation jurisdiction over a state-law claim based on a fairly nebulous connection to an ambiguous provision of a confirmed plan.  There, the plan contemplated that the debtor, a gas producer, would continue to renegotiate its gas supply agreements after the plan became effective.  The reorganized debtor in fact renegotiated those agreements, and a dispute later arose between the reorganized debtor and its contractual counterparty over the terms of that post-effective date agreement.  The Fifth Circuit squarely rejected the claim that such a claim fell within the related-to jurisdiction.  That jurisdiction, the court emphasized, "requires a careful evaluation of the connection between a dispute and the plan of reorganization."[56]  And the connection present in *Sanchez Energy* was insufficient.  "This settlement was a business deal that shuffled or replaced pre-bankruptcy

---

[56] *Sanchez Energy*, 159 F.4th at 318.

agreements among various parties."[57]   Such an agreement does "not pertain to the plan's implementation or execution."[58]   The question then becomes, both under *Sanchez Energy* and Third Circuit law, what kind of connection to the plan – other than an action to enforce or construe the plan itself – *is* sufficient to warrant the invocation of the post-confirmation related-to jurisdiction.

C.    **Under *Resorts*, neither the materiality of the lawsuit to creditor recoveries nor retention of jurisdiction provisions is sufficient to permit post-confirmation related-to jurisdiction.**

So here is the challenge posed by *Resorts*.  The Third Circuit made clear in that opinion that some form of related-to jurisdiction could exist after a plan is confirmed. But the possible examples the court offered are mostly circumstances in which a court would be enforcing or construing its own order, which typically do not require one to rely on the related-to jurisdiction.  When, then, is it appropriate for a court to continue to exercise post-confirmation related-to jurisdiction?  Two potential answers to that question with which courts have grappled are (a) where the recovery on the cause of action is highly material – either to the filing of the bankruptcy case itself or to creditor recoveries; and/or (b) where the plan by its terms reserves jurisdiction over the cause of action.  Indeed, this Court noted in *Structurlam* that it was at least a "debatable proposition" whether *Resorts* would permit a court to retain post-confirmation jurisdiction when the suit is over "*the* precipitating event that led to the filing of the [debtors'] bankruptcy case" and the claim "could be among the creditors'

---

[57] *Id.* at 323.

[58] *Id.* (internal citation, quotation, and brackets omitted).

27

most substantial sources of recovery."[59]   That said, lower courts within the Third Circuit have generally concluded – correctly, in this Court's more considered view – that in light of the analysis in the *Resorts* opinion, neither the materiality of the claim nor a general retention of jurisdiction provision in a plan is, standing alone, a sufficient basis for exercising post-confirmation related-to jurisdiction.

> **1.    The materiality of the action, either to causing the bankruptcy filing or to creditor recoveries, cannot itself be sufficient to give rise to related-to jurisdiction.**

The *Resorts* opinion seems to exclude the possibility that the materiality of the claim is, by itself, a basis for the post-confirmation exercise of related-to jurisdiction. The claim in *Resorts* was one for professional malpractice that was allegedly committed after the plan had become effective.  The Third Circuit stated that even though the claim had the potential to increase the corpus of the litigation trust (and therefore its beneficiaries' recoveries), that was not enough to create a "close nexus." It explained that the possibility of expanding the universe of trust assets was not sufficient to grant the bankruptcy court subject-matter jurisdiction because that would allow *any* lawsuit asserted by a post-confirmation trust to fall within the category of "related-to" jurisdiction.[60] "Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts."[61]

---

[59] *Structurlam*, 2025 WL 3037162 at *8 (emphasis in original).

[60] *Resorts*, 372 F.3d at 170.

[61] *Id.*

*BWI Liquidating Corp.* followed this line of reasoning, holding that the potential increase in creditors' recovery alone is not enough to support post-confirmation jurisdiction.[62] There, the debtors had a contract with the City of Rialto, California to treat contaminated groundwater. After confirmation, the post-confirmation liquidating trust sued the city for amounts allegedly due under the contract. The trust asserted that there was a close nexus between the claims and the bankruptcy case because proceeds from the claims would increase recoveries for the creditors. Judge Walrath's opinion rejected that argument, concluding that this factor alone is insufficient to establish post-confirmation jurisdiction. "The Court disagrees with the Plaintiff and concludes a Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction."[63] Because the plan in *BWI Liquidating* "only broadly provided for retention of jurisdiction over causes of action, it provides no evidence of a sufficiently close nexus with the bankruptcy proceeding to support post-confirmation jurisdiction."[64]

Judge Sontchi reached the same conclusion in *Fairchild Liquidating Trust.*[65] There, the post-confirmation trust filed adversary proceedings against the defendants, the State of New York and the New York Department of Transportation, asserting breach of contract and various takings claims. In the adversary proceeding, the trust alleged that the recovery from these adversary proceedings would allow the

---

[62] *In re BWI Liquid. Corp.*, 437 B.R. 160 (Bankr. D. Del. 2010).

[63] *Id.* at 166.

[64] *Id.*

[65] *In re Fairchild Corp.*, 452 B.R. 525 (Bankr. D. Del. 2011).

trust to increase the distributions to the more than 4,500 creditors that had filed claims.

The court found that was insufficient to support the exercise of post-confirmation related-to jurisdiction, observing that "the possibility of increasing the assets of a trust and distribution to creditors does not necessarily create a close nexus that would confer jurisdiction on the bankruptcy court."[66]  As the Third Circuit had itself noted in *Resorts*, a bankruptcy court's related-to post-confirmation jurisdiction would be unlimited if that were a sufficient basis for jurisdiction.  Therefore, even though the adversary proceeding "may 'promote the efficient distribution of trust assets to creditors,' it [was] insufficient in and of itself to confer jurisdiction upon the bankruptcy court."[67]

Most recently, Judge Walrath reached the same conclusion in *Nu Ride*. There, Lordstown Motors Corp. and its affiliates were manufacturers of a line of electric vehicle trucks.  Shortly after the plan became effective, the reorganized debtor filed an adversary complaint against the insurance underwriters, Certain Underwriters at Lloyd's London, seeking coverage of defense costs related to pre-bankruptcy lawsuits and investigations.  The insurers moved to dismiss the complaint for want of subject-matter jurisdiction. The Court granted the motion, holding that there was not a sufficiently close nexus between the claims in the adversary proceeding and the plan because the claims at issue did not affect the interpretation, consummation,

---

[66] *Id.* at 531.

[67] *Id.*

execution, or administration of the plan.[68] "Instead, the claims [were] simply a means by which some creditors may get an additional recovery, which alone is an insufficient nexus."[69]

Notwithstanding its prior ruminations in *Structurlam*, this Court is persuaded by this line of authority and accordingly concludes that the materiality of a claim or cause of action, whether because it arises out of an event that precipitated the bankruptcy or because of its importance to creditor recoveries, is not by itself a sufficient basis to support the exercise of post-confirmation subject-matter jurisdiction.

### 2. Retention of jurisdiction provisions are not themselves sufficient.

The caselaw on the effect of a retention of jurisdiction provision is more of a mixed bag. On the one hand, it is settled law that federal courts exercise limited jurisdiction, empowered to hear only those cases that Congress has placed within their reach.[70] Parties therefore cannot manufacture jurisdiction where the statute does not supply it — not by consent, not by waiver, and not by contract.[71] These principles apply with full force to a chapter 11 plan. A provision announcing that the court will "retain jurisdiction" over post-confirmation disputes is effective only to the

---

[68] *In re Nu Ride Inc.,* No. 23-10831 (MFW), 2025 WL 1600566, at *7 (Bankr. D. Del. June 5, 2025).

[69] *Id.*

[70] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute"); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction.").

[71] *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinée,* 456 U.S. 694, 702 (1982).

extent jurisdiction otherwise exists under 28 U.S.C. § 1334(b); it cannot enlarge it. As *Resorts* put the point, "neither the bankruptcy court nor the parties can write their own jurisdictional ticket."[72]   At most, a retention provision expresses the parties' intention that the court exercise whatever jurisdiction it has — a necessary predicate, perhaps, but not itself a source of jurisdiction.

Judge Dorsey followed this principle in *Augustus Intelligence*.[73]   There, claims held by certain investors in the debtor that ran against another investor were all assigned under a confirmed plan to a post-confirmation trust.  The trust would then pursue those claims for the benefit of those assigning investors.  When the post-confirmation trust asserted those claims, the bankruptcy court dismissed them for lack of subject-matter jurisdiction.  "[R]etention of jurisdiction provisions are effective only where the dispute shares the requisite close nexus to the bankruptcy."[74]   The dispute in *Augustus Intelligence* did not because the claims there were "neither claims over which the Court had pre-confirmation jurisdiction, nor claims that will be liquidated for the benefit of the estate's creditors."[75]   Rather, they are "third-party

---

[72] *Resorts*, 372 F.3d at 161.  *See also Seven Fields,* 505 F.3d at 256 ("[C]ourts will give effect to retention-of-jurisdiction provisions that reorganization plans sometimes include only if there is bankruptcy court jurisdiction under 28 U.S.C. §§ 1334 and 157, as neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  In other words, in the absence of statutory federal jurisdiction, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant.  Of course if there is jurisdiction, we will give effect to retention of jurisdiction provisions.") (internal citations and quotations omitted).

[73] *In re Augustus Intelligence, Inc.*, No. 23-50370, 2025 WL 936432 (Bankr. D. Del. Mar. 26, 2025).

[74] *Id.* at *4.

[75] *Id.*

claims never subject to this Court's jurisdiction, which will be liquidated for the benefit of only those equity holders who assigned them."[76]  As such, jurisdiction over such claims could not be created by the provisions of the plan.

On the other hand, it is also true that courts have looked to retention of jurisdiction provisions in a plan as a basis to conclude that a particular cause of action indeed has a close nexus to the plan.  For example, the liquidating trust in *AstroPower* brought a variety of state law claims arising out of a prepetition sale of stock the debtors held in a company called Xantrex for an allegedly depressed price.  The defendants moved to dismiss those claims for lack of subject-matter jurisdiction.  In that case, the plan and confirmation order specifically provided for the retention of jurisdiction over "causes of action arising out of or in connection with the Debtor's sale of stock in Xantrex Technology, Inc."[77]

The court concluded that, where the plan explicitly described an action over which the court had "related-to" jurisdiction pre-confirmation and explicitly provided for the bankruptcy court to retain jurisdiction to liquidate the claim for the benefit of the estate's creditors, there was a sufficiently close nexus to the bankruptcy proceeding and the plan to grant post-confirmation "related-to" jurisdiction.[78]  In finding a close nexus, the *AstroPower* court emphasized that the claims at issue were

---

[76] *Id.*

[77] *In re AstroPower Liq. Tr.,* 335 B.R. 309, 324 (Bankr. D. Del. 2005).

[78] *Id.* at 325.

"both logically linked to the Debtor's prepetition losses, and entrusted to the Plaintiff via the Plan for the benefit of creditors."[79]

This Court's conclusion drawn from this body of caselaw is that the materiality of the cause of action to the confirmed plan and the inclusion of an express retention of jurisdiction provision are relevant factors, under *Resorts*, that bear on the propriety of a court retaining post-confirmation related-to jurisdiction, though neither is sufficient on a stand-alone basis without more.

At the very least, it is clear from this body of caselaw that a retention of jurisdiction provision will only be effective if the plan specifically identifies the claim as one over which the bankruptcy court is retaining jurisdiction. Here, it is significant that the plan administrator's brief does not even rely on the plan's retention of jurisdiction provision (Art. XII) at all. Rather, he argues that Article IV.P of the plan, as well as the plan supplement, vests these causes of actions in the Wind Down Debtors.[80]

That much is true. But no one disputes that the plan administrator has the right to sue the defendants for breach of contract. The question is whether those suits may be asserted in *this* Court, as opposed to being claims that the plan administrator

---

[79] *Id.* at 324. (internal quotation, brackets, and emphasis omitted). Note that the court in *AstroPower* sought to distinguish *Resorts* on the ground that the cause of action there arose after the effective date, whereas the claim in *AstroPower* was a prepetition claim that had been property of the estate during the bankruptcy case. *See id.* (relying on the "post-confirmation nature of the dispute" in *Resorts*). That distinction, however, would not appear to survive the Third Circuit's decision in *Seven Fields*. *See supra* n.48.

[80] Green Convergence D.I. 20 at 9-11.

34

would need to bring in another court.  The fact the plan vests the claims in the Wind Down Debtors does nothing at all to answer that question.

In any event, the lesson from the caselaw described above is that a general description of retained causes of action will typically not be effective in retaining post-confirmation jurisdiction – and certainly not jurisdiction over a cause of action as generic as a garden-variety prepetition receivable.  The Court will accordingly dismiss counts II and III of the complaints now before it.

Because of the recurring nature of this issue, however, the Court believes it may be appropriate and helpful to add a word of further guidance on the retention of post-confirmation jurisdiction.  In the following section of this Memorandum Opinion, the Court will therefore undertake to set forth its own understanding of when a retention of jurisdiction provision will validly and properly retain post-confirmation jurisdiction over a claim that was otherwise within the related-to jurisdiction before the plan was confirmed.

**D.**     ***Resorts* does suggest the possibility that some post-confirmation disputes, other than those involving enforcement or interpretation of the plan would have a "close nexus" to the plan; § 1141(b) provides a mechanism for accomplishing this.**

As explained above, the challenge with which lower courts in the Third Circuit have grappled stems from the fact that *Resorts* strongly suggests, in announcing the "close nexus" test, that there are *some* matters that remain within the related-to jurisdiction after a plan is confirmed.  It would make little sense to say that this jurisdiction is limited only to enforcing the terms of the plan itself, since the terms of the plan would likely be viewed as encompassed by the confirmation order, and a

35

court would have the authority to construe or enforce its own prior orders *without* needing to rely on the related-to jurisdiction. Moreover, the Third Circuit's language in describing the scope of this post-confirmation jurisdiction seems to be intentionally broader than merely saying that bankruptcy courts may enforce the terms of their plans. Rather, it said that post-confirmation related-to jurisdiction may extend to matters affecting the "interpretation, implementation, consummation, execution, or administration of the confirmed plan."[81]

In this way, *Resorts* suggests that some post-confirmation disputes beyond pure plan enforcement may remain within the bankruptcy court's jurisdiction, so long as they are genuinely tied to the plan's functioning.[82] *Resorts* therefore permits a limited category of post-confirmation disputes beyond literal plan interpretation, but only where the dispute remains anchored in the plan's implementation or administration rather than in the mere prospect of enlarging the trust's *res*. The question, then, is whether there is a principled way to reconcile *Resorts* with the post-confirmation exercise of jurisdiction over claims that would otherwise fall only within the related-to jurisdiction. In this Court's view, there is.

While it is true that *Resorts* does not say so in so many words, § 1141(b) of the Bankruptcy Code provides the most sensible tool with which to square this circle. *Resorts* cites to and quotes this provision for its statement that unless "otherwise provided by the plan or order confirming the plan, 'the confirmation of a plan vests

---

[81] *Resorts*, 372 F.3d at 166–167.

[82] *Id.* at 166–169.

all of the property of the estate' in the reorganized debtor."[83]  Indeed, in the very next sentence, the Third Circuit cited to an opinion of the District of Delaware in *NVF Co. v. New Castle County* as standing for the proposition that under § 1141(b), the bankruptcy estate "no longer exist[s]" after the plan is confirmed.[84]

In short, § 1141(b) creates the default presumption that property of the estate revests in the debtor, and thus that the estate terminates on confirmation.  And that provision is subject to an express exception – "unless otherwise provided by the plan or the order confirming the plan."  On this reading, the question then becomes when would it be appropriate for a bankruptcy court to create an exception to the presumption of revesting, and thus allow a bankruptcy estate to remain open even after the plan becomes effective.  In such a case, the post-confirmation trust could then pursue the cause of action *on behalf of the bankruptcy estate itself*.  And in such a case, the assertion of that claim would both have a direct effect on the estate and thus a close nexus to the plan.  The answer to that question, as it turns out, lines up very closely to what the Third Circuit said in *Resorts* about what it means to have a "close nexus" to the plan.

There is relatively little authority addressed to the question of when a bankruptcy court should permit a chapter 11 bankruptcy estate to remain open after confirmation under § 1141(b).  There is, however, a more extensive jurisprudence focused on when a chapter 13 estate may remain open after confirmation under

---

[83] *Id.* at 165 (quoting 11 U.S.C. § 1141(b)).

[84] *Id.* (citing *NVF Co. v. New Castle County,* 276 B.R. 340, 348 (D. Del. 2002)).

§ 1327(b).  And while that chapter 13 caselaw is not, of course, controlling, those cases are analytically helpful because the language of § 1327(b) is materially identical to that of § 1141(b).  It provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."[85]

Courts have divided over the question whether and when it is appropriate to keep a chapter 13 estate open after the plan is confirmed.  To be sure, the language of § 1306 adds a complication in consumer chapter 13 cases that is not presented in a corporate chapter 11 case.  But even so, the best reasoned authority (particularly the Seventh Circuit decisions in cases such as *Heath*, *Steenes*, and *Cherry*) holds that, as with chapter 11 under § 1141(b), confirmation is the default point at which the bankruptcy estate terminates and property revests in the debtor.  Even so, however, a plan may, in appropriate circumstances, vary from that default by providing otherwise.[86]

---

[85] 11 U.S.C. § 1327(b); *see also* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.").

[86] See *In re Heath*, 115 F.3d 521, 523–524 (7th Cir. 1997) (holding that, upon confirmation, property not necessary to performance of the Chapter 13 plan revests in the debtor); *In re Steenes*, 918 F.3d 554, 556 (7th Cir. 2019) (reaffirming that, under § 1327(b), property of the estate ordinarily revests in the debtor at confirmation); *In re Cherry*, 963 F.3d 717, 718 (7th Cir. 2020) (same); Jonathan M. Seymour, *The Limited Lifespan of the Bankruptcy Estate: Managing Consumer and Small Business Reorganizations*, 37 Emory Bankr. Dev. J. 1, 24–30 (2020) (endorsing the Seventh Circuit's estate-termination approach as the correct default rule, while recognizing that a plan or confirmation order may provide otherwise).  In the corporate chapter 11 context, it is likely the effective date of the plan, not the date of confirmation, that marks the termination of the estate.  That detail, however, is not critical to this analysis.

So what is an appropriate circumstance that would justify an exception to the default rule created by § 1327(b)?  This Court touched on that issue in *Smallhold*, a subchapter V case that raised issues that are essentially the same as those that arise under chapter 13.  It noted there that "while § 1327(b) 'gives bankruptcy judges discretion to hold assets in the estate in particular cases ... the exercise of this discretion—like the exercise of all judicial discretion—requires a good reason.'"[87]  The court offered the following example: "if a debtor has an illiquid asset that needs to be liquidated over time in order to permit the debtor to meet its plan obligations, that asset may be kept in the bankruptcy estate and thus be protected (under the automatic stay, which under § 362(c)(1) protects property of the estate so long as it remains in the bankruptcy estate) from post-confirmation creditors during the period when the debtor is performing its plan obligations."[88]  Otherwise, however, "the default provision of § 1327(b) should control, and property shall re-vest on confirmation."[89]

Significantly, one can make the very same point using the language of *Resorts*. If the only way the debtor could meet its obligations under the plan would be to keep a particular asset in the estate and have it liquidated after the effective date, one could certainly say that the asset in question has a "close nexus" to the plan and bears

---

[87] *In re Smallhold Inc.*, 675 B.R. 313, 326-327 (Bankr. D. Del. 2025) (quoting *Steenes*, 918 F.3d at 557).

[88] *Id.* at 327.

[89] *Id.*

on the "implementation, consummation, execution, or administration of the confirmed plan."[90]

Otherwise put, when the asset that needs to be monetized in order for the plan to work is a cause of action, one could say that it would be appropriate, under § 1141(b), to leave the estate open after the plan becomes effective so that the claim remains property of the estate after the effective date. If that were to occur, § 1123(b)(3)(B) would expressly permit the reorganized debtor or a post-confirmation trust to bring an action in the bankruptcy court to assert that claim.

But applying the analysis from cases like *Steenes, Heath*, and *Cherry*, this is not something that ought to be done every day. The default rule is one of revesting, and an exception would require a genuine showing that the circumstances of the case are such that the success of the plan requires that a cause of action remain property of the bankruptcy estate after the plan becomes effective. For that reason, this Court finds it difficult to imagine that the proponent of a plan could make such a showing without identifying the claim or cause of action that is being retained in the estate with some degree of specificity.

Read this way, § 1141(b) provides the mechanism for the limited post-confirmation jurisdiction that *Resorts* contemplates.[91] If there is a genuinely important reason to leave the estate open with respect to a particular cause of action,

---

[90] *Resorts*, 372 F.3d at 166–167.

[91] *Id.* at 166–171 (limiting post-confirmation "related-to" jurisdiction to matters affecting the interpretation, implementation, consummation, execution, or administration of the plan and holding that the mere potential to increase a post-confirmation litigation trust's asset "does not necessarily create a close nexus" sufficient to confer jurisdiction).

40

the plan can say so.  In such a case, the plan would (consistent with cases like *AstroPower* and *Nu Ride*) specifically identify the claim that will remain in the estate after confirmation and articulate why it is necessary to keep the estate open for this purpose.  If the estate is left open in this targeted way, then the outcome of litigation over that claim will affect the estate and satisfy the traditional "related-to" standard as articulated in *Pacor*.[92]  That understanding reconciles *Resorts*' recognition of the authority to retain some post-confirmation related-to jurisdiction where the claim has a "close nexus" to the plan, but only (as *Resorts* makes clear) in specific and limited circumstances.[93]

There are three additional points that should be implicit in the above analysis, but that, for the sake of clarity, the Court intends to make express:

*First*, nothing in the analysis above would limit or restrict a court's authority, on a post-confirmation basis, to construe or enforce the terms of the plan or its confirmation order.  *Resorts* makes clear that courts do have such authority, even after the plan has become effective.  And cases like *Seven Fields* and *Essar Steel* make clear that this authority to enforce the plan and the court's prior orders does not even require an assessment of whether there is related-to jurisdiction because of a "close

---

[92] *See Pacor,* 743 F.2d at 994 (defining "related-to" jurisdiction to exist where "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy").

[93] *See* 11 U.S.C. §§ 1141(b); *Resorts*, 372 F.3d at 166–171 (limiting post-confirmation "related-to" jurisdiction to matters affecting the interpretation, implementation, consummation, execution, or administration of the plan and holding that the mere potential to increase a post-confirmation litigation trust's asset "does not necessarily create a close nexus" sufficient to confer jurisdiction).

41

nexus." The analysis set forth above accordingly applies *only* in a case in which the only basis for subject-matter jurisdiction over the claim would be that it is within the related-to jurisdiction on a post-confirmation basis.

*Second*, as this Court sees it, the inclusion of retention of jurisdiction language in a plan is of a jurisdictional nature, such that the Court will be obligated to ensure that the plan does not purport to retain post-confirmation related-to jurisdiction over any matter that is not specifically identified, and that those matters that are so identified meet the standard set forth above.

*Third*, as to plans that have been confirmed already, applying the analysis of *AstroPower* and *Nu Ride*, a retention-of-jurisdiction provision that fails to identify a specific cause of action is unlikely to be sufficient to retain post-confirmation related-to jurisdiction. As to actions that have been specifically identified, there is at least a question whether the jurisdictional nature of the analysis means that the question of the propriety of those provisions is subject to being revisited or whether the preclusive nature of the confirmation order means that such a provision should be given effect even if it would not meet the standards described above. At first blush, an argument can certainly be made, from cases such as *Espinosa* and *Congoleum*, that ordinary preclusion principles would apply.[94] But that issue is not before the Court at this time, so it would be neither necessary nor appropriate to resolve it more definitively here.

---

[94] *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010); *In re Congoleum Corp.*, 149 F.4th 318, 332 (3d Cir. 2025).

42

**Conclusion**

The *SunPower* plan did not specifically identify the receivable claims at issue in either of the adversary proceedings before the Court as matters over which this Court would retain post-confirmation jurisdiction.  Counts II and III of each of those complaints will accordingly be dismissed for lack of subject-matter jurisdiction.  For the reasons described above, the motion to dismiss Count I will be denied.  The parties are directed to settle appropriate orders consistent with this Memorandum Opinion.

Dated: July 23, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE